UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CURTIS HOWELL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | C.A. No. 21-11978-ADB |
| | * | |
| DEPARTMENT OF HOUSING AND | * | |
| COMMUNITY DEVELOPMENT, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM AND ORDER

BURROUGHS, D.J.

For the reasons set forth below, the pending motions are denied and the amended

complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon

which relief may be granted.

I.    BACKGROUND

On December 8, 2021, Curtis Howell ("Howell"), a resident of Lowell, initiated this

action by filing a *pro se* complaint against an apartment management company and several

government and non-profit housing agencies.  [ECF No. 1].  The crux of Howell's complaint is

his inability to secure housing through various agency and government programs as well as his

inability to secure a small business grant.

By Memorandum and Order dated January 31, 2022, the Court granted Howell leave to

proceed *in forma pauperis* and advised Howell that if he wishes to proceed in this matter, he

must file an amended complaint curing the pleading deficiencies of the original complaint and

setting forth a plausible claim upon which relief may be granted.  [ECF No. 11].

The January 31, 2022 Memorandum and Order advised Howell that the major deficiency with his complaint is that it is in the form of a narrative that fails to identify which specific facts are attributed to which claim. The Order explains that Howell's complaint fails to meet the pleading requirements the Federal Rules of Civil Procedure and missing from the complaint is any decipherable articulation of the legal causes of action Howell seeks to assert against each defendant, and the factual grounds therefore. In light of the pleading deficiencies, Howell was advised that if he wishes to pursue this action, he must file an amended complaint that, among other things, clearly states what each defendant allegedly did and must identify the causes of action he is bringing against each defendant. He was cautioned that it is impermissible to bring multiple unrelated claims against unrelated parties in a single action.

In response to the Court's Memorandum and Order, Howell filed an amended complaint. [ECF No. 12].

Since the filing of his amended complaint, Howell has filed numerous motions, several of which identify four separate civil action numbers.[1] By Order dated April 7, 2022, Howell's motions were denied, in part, because they raise issues that are not material at this stage of litigation. [ECF No. 30]. At that time, Howell was ordered not to file any additional motions until the Court has reviewed the amended complaint. [*Id.*]. Additionally, the clerk was ordered to return to Howell any future documents that identify more than one case number. [*Id.*].

---

[1] The instant action is one of 4 pro se actions filed by Curis Howell on December 8, 2021. See Howell v. Lowell Police Dep't, et al., C.A. No. 21-11974-AK (pending); (2) Howell v. Middlesex Cmty. Coll., et al., C.A. No. 21-11976-JGD (pending); and (3) Howell v. Massachusetts Attorneys Gen,, et al., C.A. No. 21-11979-ADB (pending).

Now pending before the Court are Howell's Notice of Appeal Ruling, Motion to Objection to Ruling and Motion for Relief of Judgment.[2]  [ECF Nos. 34, 35, 36].  Although these motions raise, as did Howell's earlier motions, issues that are not material at this stage of litigation, Howell's most recent motion correctly identifies an ambiguity in the language of the *in forma pauperis* statute, 28 U.S.C. § 1915 (proceedings *in forma pauperis*) as discussed in Section II (standard of review), *infra*.

Although summonses have not yet issued, the New Hampshire Housing Authority[3] and the Rhode Island Housing Authority[4] filed motions to dismiss the complaint with supporting memoranda.  [ECF Nos. 20-21, 25-26].

## II.    STANDARD OF REVIEW

As noted above, the Court previously granted Howell leave to proceed *in forma pauperis*. Accordingly, under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court is required to dismiss the amended complaint if it fails to state a claim upon which relief may be granted.  Because of the ambiguity in the statutory language, Howell mistakenly argues in his Motion for Relief of Judgment [ECF No. 36] that certain requirements of 28 U.S.C. § 1915 do not apply to him because he is not a prisoner.[5]  For a litigant proceeding *in forma pauperis*, Section 1915 does authorize the federal

---

[2] Except for the recently filed Motion for Relief of Judgment [ECF No. 36], which contains the civil action number for the instant action, the earlier two motions identify four separate civil action numbers.  [ECF Nos. 34, 35].  In reviewing these two pleadings, the Court assumes that Howell filed these motions before receiving the Court's April 7, 2022 Order, as they were filed less than one week later on April 13, 2022.  [*Id.*].

[3] The legal name of the New Hampshire Housing Authority is the New Hampshire Housing Finance Authority.  [ECF No. 21 at p. 1.]

[4] The legal name of the Rhode Island Housing Authority is the Rhode Island Housing and Mortgage Finance Corporation.  [ECF No. 26 at n. 1.]

[5] Unfortunately, the language of Section 1915(a)(1) is ambiguous, in that it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1)

courts to dismiss an action that lacks an arguable basis either in law or in fact, <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915 (e)(2); <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Under the Federal Rules of Civil Procedure, a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  <u>Cardigan Mountain Sch. v. N.H. Ins. Co.</u>, 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  <u>Cardigan Mountain Sch.</u>, 787 F.3d at 84 (quoting <u>García–Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted).  "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged."  <u>García–Catalán</u>, 734 F.3d at 103 (internal quotations and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those

---

(authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). However, courts have construed that section as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  <u>See</u> e.g. <u>Hayes v. United States</u>, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); <u>see also</u> <u>Fridman v. City of New York</u>, 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).  Moreover, Section 1915(e) has been applied to non-prisoner litigants.  <u>See</u>, e.g., <u>Salgado–Toribio v. Holder</u>, 713 F.3d 1267, 1270 (10th Cir. 2013) ("[W]e apply section 1915(e)'s ... standard to both prisoner and non-prisoner litigation") (citation omitted); <u>Newsome v. EEOC</u>, 301 F.3d 227, 231 (5th Cir. 2002) (applying section 1915(e) to a non-prisoner).

facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

Because Howell is proceeding *pro se*, the Court will construe the amended complaint generously.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).  "However, *pro se* status does not insulate a party from complying with procedural and substantive law."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim.  Muller v. Bedford VA Admin. Hosp., 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

## III.   HOWELL'S AMENDED COMPLAINT

Howell's three-page amended complaint consists of 35 separate factual allegations, a separate statement of claim as to each defendant, and a request for relief.  [ECF No. 12].   In addition to naming the same five defendants that were named in the original complaint, the amended complaint adds the Department of Justice as a defendant.  [*Id.*, case caption].  With the amended complaint, Howell submits a cover letter [ECF No. 12-1], written interrogatories [ECF No. 12-2], summons [ECF No. 12-3], and copies of pages 6 - 9 of Howell's original complaint [ECF No. 12-4].  As to the claims asserted in the amended complaint, Howell claims violations

of the following statutes: 42 U.S.C. § 1981[6], 42 U.S.C. § 1982[7], 42 U.S.C. § 1983[8], 42 U.S.C. §

1985[9], 42 U.S.C. § 1986[10], 42 U.S.C. § 12133[11], 42 U.S.C. § 2000a-6[12], 42 U.S.C. §§ 2000d-1,

---

[6] Section 1981 guarantees "equal rights under the law." 42 U.S.C. § 1981.

[7] Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real property." 42 U.S.C. § 1982.

[8] Section 1983 provides a private remedy against individuals who, acting under color of state law, cause a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

[9] "Section 1985 has three subsections, each of which sets forth a distinct cause of action." Donahue v. City of Boston, 304 F.3d 110, 122 n. 9 (1st Cir. 2002). Howell has not specified under which subsection of § 1985 he seeks to proceed.

[10] Section 1986 provides a cause of action against an official for neglecting to prevent a conspiracy under 42 U.S.C. § 1985.

[11] Title II of the Americans with Disabilities Act, 42 U.S.C. § 12133 provides that "the remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the [same as those set forth in this subchapter that] provides to any person alleging discrimination on the basis of disability in violation of section 12132." 42 U.S.C. § 12133.

[12] Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–2000a-6, prohibits discrimination in designated places of public accommodation.  42 U.S.C. § 2000a.

2000d-2 (collectively "Title VI")[13], 42 U.S.C. § 12117[14], 42 U.S.C. § 12188[15],  and 29 U.S.C. § 794.[16]  [ECF No. 12 at ¶¶ 42, 45, 47, 48, 49].

For relief, Howell seeks "$3,000,000 million dollars for denying [Howell] an opportunity for housing."  [ECF No. 12 at ¶ 51].  In the relief section, Howell states that he "was trying to escape violence and theft of property but the local police denied [Howell] public accommodation [and] the department of justice denied [Howell] assistance to escape abuse."  [ECF No. 12 at ¶ 53].

Howell's supporting facts are presented in 35 separately numbered paragraphs, most of which consist of a single sentence.  [ECF No. 12 at ¶¶ 1 - 35].  As best as can be discerned from the *pro se* pleading, the following facts concerning each defendant are taken from the amended complaint.

1. Defendant Rhode Island Housing Authority

As to the Rhode Island Housing Authority, the amended complaint alleges that it "participated with providing federal funds to heritage property in connection with fraud and

---

[13] Section 2000d-1 authorizes and directs federal departments and agencies that are "empowered to extend Federal financial assistance to any program or activity ... to effectuate the provisions of section 2000d ...." 42 U.S.C. § 2000d-l.

[14] Section 12117 provides that the "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment. 42 U.S.C. § 12117(a).

[15] Title III of the Americans with Disabilities Act, 42 U.S.C. § 12188(a)(1) provides that "the remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..."   42 U.S.C. § 12188(a)(1).

[16] Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination on the basis of disability by programs receiving federal financial assistance.

identify theft." [ECF No. 12 at ¶ 40].  Howell alleges that on March 18, 2018, he "filled out applications to Rhode Island housing authority."  ECF No. 12 at ¶ 1].  Howell waited to be contacted by the Rhode Island and New Hampshire Housing Authorities on March 18, 2018 as well as from November 8, 2018 through June 18, 2021.  [ECF No. 12 at ¶ 7].  Howell contends that he needed housing and that "3 years went by waiting after the initial contact with these housing authorities." [ECF No. 12 at ¶ 8].  Howell states that his "only hope was Rhode Island housing authority [and that he] applied for housing at the same time [as New Hampshire Housing Authority]." [ECF No. 12 at ¶ 13].

Howell alleges that he "received information [from the heritage property website] that someone put in an application and connected Rhode Island housing voucher to the heritage property application." [ECF No. 12 at ¶ 23].  Howell then discovered that "the Rhode Island housing authority applicant is now a heritage property resident."  [ECF No. 12 at ¶ 24].  Howell "contacted" the Rhode Island housing authority who advised that Howell is still "on the waiting list." [ECF No. 12 at ¶ 25].  Howell states that he "sent them" the document and that "they never contact[ed Howell] back." [ECF No. 12 at ¶ 26].

Howell contends that the Rhode Island Housing Authority failed to investigate the fact that Howell did not fill out an application with heritage properties.  [ECF No. 12 at ¶ 41].  Howell states that these facts amount to "fraud and discrimination."  [ECF No. 12 at ¶ 42].

2. Defendant Heritage Properties

As to Heritage Properties, the amended complaint alleges that they allowed "Housing property to be occupied in [Howell's name], [ECF No. 12 at ¶ 43], and that Howell never provided his personal information to Heritage Properties.  [ECF No. 12 at ¶ 44].  Howell states that he received "an email about heritage property." [ECF No. 12 at ¶ 22].   After trying to create

an account, and being advised that there was already an existing account, Howell changed the password and logged into the account. [ECF No. 12 at ¶ 22].  Howell contends that the Heritage Property website indicated that "someone put in an application and connected Rhode Island housing voucher to the heritage property application. "[ECF No. 12 at ¶ 23].   Howell discovered that the "Rhode Island housing authority applicant is now a heritage property resident." [ECF No. 12 at ¶ 24].  Howell contacted Heritage property, but they never contacted [Howell] back. [ECF No. 12 at ¶ 27].

Howell states that while in Lowell, he went to Heritage Properties to inquire whether there was an apartment in Howell's name.  [ECF No. 12 at ¶ 32].  At that time, Howell "showed them the documentation but they had documentation from previous call [that Howell] never received back to reassure [Howell that] there was no property although there (sic) documentation on there (sic) computer says so which would hold both parties liable and appeared like housing fraud connected to there (sic) business." [ECF No. 12 at ¶ 32].  Howell contends that these facts amount to "discrimination and fraud connected to federal housing funding." [ECF No. 12 at ¶ 45].

   3. <u>Defendant Department of Housing and Community Development and Defendant Community Teamwork</u>

As to the Department of Housing and Community Development and Community Teamwork, the amended complaint alleges that they "did not provide [Howell with] emergency housing lodging fees to a hotel or motel so that [Howell could] be safe from violence and [protect his] intellectual properties [from theft]."  [ECF No. 12 at ¶ 48].

Howell contacted "DHCD and community teamwork but [he wasn't getting] assistance with lodging fees to relocate."  [ECF No. 12 at ¶ 16].  In connection with "the Community

Teamwork application for housing," Howell contacted heritage property who advised Howell that he "would be denied housing due to his criminal record."  [ECF No. 12 at ¶ 20].

4.  <u>Defendant New Hampshire Housing Authority</u>

As to the New Hampshire Housing Authority, the amended complaint alleges that it denied Howell "priority status" despite the fact that Howell "sent reports from department of justice and Lowell police." [ECF No. 12 at ¶ 49].  Howell alleges that he "filled out applications to New Hampshire Authority and Mass. Section 8 voucher and that he received a "notice from New Hampshire housing authority stating [that Howell is] next up on the list." [ECF No. 12 at ¶¶ 3,4].  In response to a request for verification, Howell mailed documentation concerning his "release from Old colony corrections center and medical history." [ECF No. 12 at ¶¶ 4, 5]. Howell states that he received notice that he "was denied priority status" but that he did not immediately file an appeal. [ECF No. 12 at ¶ 6].  Howell reiterates that he waited to be contacted by the Rhode Island and New Hampshire Housing Authorities on March 18, 2018 as well as from November 8, 2018 through June 18, 2021 and that he needed housing and that "3 years went by waiting after the initial contact with these housing authorities." [ECF No. 12 at ¶¶ 7, 8].

Howell states that he received a notice from the New Hampshire Housing Authority "about vouchers for those fleeing violence."  [ECF No. 12 at ¶ 9].  He says that he "sent in documentation to New Hampshire housing Authority relating to violence upon [Howell]."  [ECF No. 12 at ¶ 10].  Further, Howell "sent in documentation that [Howell] needed to flee from violence [by submitting] multiple police and gov. reports."  [ECF No. 12 at ¶ 12].  Howell "filed an appeal for the denied violence priority status and a late appeal for the denial of the first

priority status in relation to the New Hampshire housing Authority. Letter from Dee Puliot."
[ECF No. 12 at ¶ 13].

    5.  <u>Defendant Department of Justice</u>

       As to the Department of Justice, the amended complaint alleges that it "failed to investigate issues of housing civil rights violations and abuse relating to violence upon [Howell]." [ECF No. 12 at ¶ 47].   Howell states that he "wrote complaints to the department of justice about people breaking into [Howell's] home, [and] sexually assaulting [Howell]." [ECF No. 12 at ¶ 17].  Howell complains of "invasion of [his] telephones and theft of [his] intellectual property."  [ECF No. 12 at ¶ 17].   Because it "appeared" to Howell that there was "a conspiracy to steal and defraud next to [Howell's] housing rights in various agencies in Massachusetts and in other states," Howell "made a complaint to the department of justice to find out about these issues."  [ECF No. 12 at ¶ 33].  Finally, Howell states that he brings "suit upon the last party who has an appearance of fraud in connection to [Howell's] housing needs, especially when there's violence involved of a serious nature and intellectual property theft that's worth $100,000,000,000 billion."  [ECF No. 12 at ¶ 35].

## IV.    DISCUSSION

       In filing his amended complaint, Howell attempts to comply with the Court's instruction to clearly state what each defendant allegedly did and identify the causes of action he is bringing against each defendant.  He recognizes that he "is not an officer of the law" and states that he cannot "conduct [an] investigation and cannot connect the series of patterns of civil rights violations which rose to being criminal, retaliatory with other complaints and leaves [Howell] to be further harmed and denied [his] rights to pursue [his] business, rehabilitation and religion." [ECF No. 12 at ¶ 54].

Notwithstanding Howell's efforts to comply with the Court's Order, the amended complaint fails to state a claim upon which relief may be granted.  Here, the amended complaint, as did the original complaint, fails to identify which facts apply to which claims. Although granted an opportunity to do so, Howell fails to separately set forth sufficiently pleaded factual allegations for liability as to each defendant as to each statute.   In fact, for many of the factual allegations, it is difficult to ascertain which defendant is implicated.  Even disregarding the legal conclusions in the amended complaint, the factual content and inferences reasonably drawn therefrom fail to state a claim upon which relief may be granted for any defendant.  As to the legal claims, Howell does not expound on the relevance of each statute as applied to the facts alleged.

To the extent Howell seeks to bring suit against the United States Department of Justice for failing to investigate his complaints, such a claim is not plausibly pleaded.  Even assuming that the amended complaint properly alleges "a constitutional tort for failure to investigate the crimes of government officers and employees in violation of [Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)[17] or the Federal Torts Claims Act[18]] . . a federal agency is not a proper party in a Bivens action, see Federal Deposition Ins. Corp. v. Meyer, 114 S.Ct. 996 (1994), or a FTCA suit, see Galvin v. Occupational Safety & Health Admin., 860 F.2d 181 (5th Cir. 1988)." Hooker v. Supreme Court United States, No. 04-3454, 2005 WL 8173979, at *3

---

[17] In Bivens, the Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.  Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

[18] The Federal Tort Claims Act ("FTCA") is a limited waiver of the federal government's immunity from tort lawsuits, allowing plaintiffs to sue the federal government "for money damages ... [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

(E.D.La. 2005).  Accordingly, the amended complaint fails to state a claim against the Department of Justice.

To the extent Howell brings a claim under Section 1983 for alleged violations of his constitutional rights, such claims must be dismissed because the named defendants are not "persons" subject to suit under section 1983.  Section 1983 imposes liability on any "person" who, under color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) (citing 42 U.S.C. § 1983). The United States Supreme Court has long held that states, their agencies, and their officials acting in their official capacities are not "persons" subject to suit under section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither a state nor its officials are "persons" for purposes of § 1983); see also Quern v. Jordan, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting Section 1983); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir.2002) ("[T]here has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity").

Notwithstanding Howell's use of the word "discrimination," the amended complaint fails to allege any facts suggesting that any defendant should be liable under any of the statutes referenced in the amended complaint.  Howell doesn't allege that he suffers from a qualified disability or that he is a member of a protected class.  Even assuming that Howell suffers from a qualified disability or is a member of a protected class, he does not allege any facts suggesting that any of the defendants failed to reasonably accommodate such disability or denied him access to services based on race or disability.  The claims are conclusory in nature and vaguely pleaded at best.

Even with a generous reading, the amended complaint does not meet the screening requirements of 28 U.S.C. §1915(e)(2)(B)(ii).  The Court is not required to "conjure up unpled allegations," notwithstanding the duty to be less stringent with *pro se* complaints.  McDonald v. Hall, 610 F.2d 16, 19 (1st Cir.1979).  The amended complaint reads as an airing of personal grievances, pleaded in a conclusory fashion, about Howell's interactions with the various entities named as defendants in this action.

Given the foregoing, and the fact that Howell has already been provided with an opportunity to amend his complaint, the Court concludes that he is unable to plead a claim upon which relief may be granted.  The Court will not provide Howell with an opportunity to amend his complaint a second time. Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (the district court may deny a motion to amend "for any adequate reason apparent from the record" including "[f]utility of the amendment."); see also Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 23 (1st Cir. 2014) (explaining that *sua sponte* dismissal is appropriate only when it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile).

## V.     CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby Orders:

1.      Howell's motion to objection to ruling [ECF No. 35] is DENIED.

2       Howell's motion for relief from judgment [ECF No. 36] is DENIED.

3.      Defendant New Hampshire Housing Finance Authority's motion to dismiss the plaintiff's complaint [ECF No. 20] is DENIED AS MOOT.

4.      Defendant Rhode Island Housing and Mortgage Finance Corporation's motion to dismiss the plaintiff's complaint [ECF No 25] is DENIED AS MOOT.

5.      Howell's amended complaint is <u>DISMISSED</u> pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted.

6.  The clerk shall enter a separate order of dismissal.

**SO ORDERED.**

May 2, 2022                                      /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                UNITED STATES DISTRICT JUDGE

15